Okay, our next case is Palo Alto Networks v. Finjan, 17-2314. We did ask the parties to submit briefs on the SAS transitional issues, let's call them. What we'd like to do is to have each of you spend no more than two minutes and tell us about your brief and your views on that, and then afterwards we'll get to the merits of the case. You'll have your complete time for that, so no more than two minutes for each side. Mr. Armon, if you could go first please. May it please the court, with respect to the impact of SAS on the 151 IPR. We view the non-presidential decision in Polaris Industries v. Arctic Cat as providing some guidance here. We ask that the court at least remand, if not vacate and remand, the 151 decision because it's facially incomplete under Section 318A. The court did grant a motion in Polaris Industries about a week ago choosing not to exercise jurisdiction and remanding so that the board could decide all claims and challenges. Do you agree that your case is a little bit different than that one? I think in that case there was a situation where the arguments that were made showed that there was a relationship between the board's final written decision and its institution decision. You don't have a situation like that here, do you? And what I mean by that is the parties were arguing that there was an inconsistency in the board's two opinions. I agree, Your Honor, that the cases are factually dissimilar in that way. We do not have a similar situation here. We view this as a prudential question of whether the court should impose the final judgment rule on cases where fewer than all claims or grounds were decided after SAS. In the N. Ray Aruna-Chalam case, the court reiterated just in 2016 that it won't entertain jurisdiction over decisions from administrative agencies like the board where there's not a proper final judgment. And all of the prudential reasons that were articulated in the N. Ray Aruna-Chalam case would apply here, both in terms of giving avoiding piecemeal appeals and also promoting efficient judicial administration. The only other comment I have here is that... So your position is that the 151 IPR decision is effective in its entirety and it's ultra vigorous and should be vacated? Correct. So you're saying we can't even consider the claims that were instituted? I think under the final judgment rule, I'm only aware of two exceptions. One, collateral order doctrine, and two, the Gillespie versus United States case. I don't think either one of those exceptions apply here. I don't think there's a proper final written decision. So you see this case as being a situation being analogous just to a final judgment in a district court. What about an analogy between a dismissal that occurred, a dismissal of some claims in district court, followed by a final decision on the merits of a claim? I'm aware in the N. Ray Arthrex case, for example, the court found that a dismissal that resulted in an adverse judgment was final enough for the court to exercise jurisdiction over. I see the distinction there and here where there isn't a decision under 318A that comports with the requirements of the court. Yeah, it's all right. I was just, you know, throwing out a hypothetical. You were analogizing this situation to a district court case, but you could also analogize it to a district court case where there's a claim that's made, it's dismissed by the district court, and then later, and maybe it was dismissed incorrectly even, but later a district court dismisses or makes a determination on the merits with the remaining claims. And isn't that just as analogous as of a district court case? Yes, I appreciate that analogy and agree, but it's, that's equivalent. I see I'm past my time. Yes, okay. Thank you. Mr. Hanna? Yes, Your Honors. May it please the Court. In this situation here, we effectively have a The Board found that the independent claims, including claims 6 and 10, were valid. It is impossible for the Board to find dependent claims 9 and 12 invalid under a litany of cases, including the Sincor case that we cite in our papers. Is it true that those dependent claims 9 and 12, the petition raises an additional piece of prior art, doesn't it? It does raise an additional piece of prior art, but only for those dependent claims. Because the issue, that piece of prior art was not applied to the independent claims. And so, so we would have to look at that prior art and look at the petition and verify that's true. It is a different ground of rejection, isn't it? It is, it is a different ground of rejection and it is an additional piece of prior art, but when you look at the petition, the only art that was cited for the independent claims has been addressed. And it's been addressed here, it's been addressed by the Board, and that's what we're going to be arguing about after these two minutes. So there's nothing that the Board can do that's going to change the outcome. It would essentially just be a rubber stamp of the independent, of the dependent claims saying that they're valid because the independent claims are valid. And that is a huge waste of judicial resources to have to remand to get a rubber stamp from the Board that can't do anything else because their hands are tied for us to come back here and argue the exact same issues. It has to be the exact same issues because the petitioner is arguing that the independent claims are invalid and they need to, to even to reach the dependent claims. So because it's an effective final written decision on all claims at issue, SAS doesn't apply and we should proceed forward. Okay, all right, well we thank counsel for their views on these important issues and we'll take them under consideration as we move forward with the case. So let's move on to the merits of 1723.14-23.15 and you have reserved three minutes of your time for rebuttal, correct? Yes, your honor. All right. And please the court, I plan to address first the appeal from the 151 IPR. I also hope to spend some time addressing the appeal from 1979 IPR. Both of these appeals are claims instruction based. Turning to the 151 IPR first, the claim language at issue is the content including a call to a first function. And the key question at issue here is whether or not the Board properly interpreted that limitation to require what it characterized a direct rather than an indirect call to a function. The key here is that the reference at issue Ross uses a technique called variable reassignment. If you look at the blue brief at page 39 or appendix 85 you'll see what that means. It means that there's a line in the code where Ross reassigns an original, a variable calling an original function to equal a new function. Can I just make sure I understand what you're saying? You're saying that that assignment is a call as broadly defined by the PPO? Yes, your honor. And it's undisputed, I think this is significant, that's undisputed as covered at appendix 86, that Ross's hook function does cause the first or substitute function, the security checking function, to provide a service. It does so indirectly in the sense that as a result of variable reassignment the name of the original function is the one that is called, but the function that actually operates or executes is the replacement function. So we have here is a security checking strategy where a suspect function is the variable assigned to that function is reassigned to a security checking function that executes first. Is this where you're relying on the cross-examination testimony for the idea that when an object, do I understand that correctly? Yes, so Dr. Medvedevich made three admissions that a call is direct. Your honor, just so I'm clear about our arguments, we have two separate arguments here. One is that the board's construction covers direct and indirect function calls and that Ross satisfies the construction because there's nothing in the claim language that limits or allows a direct function call. That's argument one. Argument two is that based upon Dr. Medvedevich's admissions, we have a direct function call here and summarized in the gray brief at page 16 are those three admissions from Dr. Medvedevich in which, in our view, he admitted that the function call is direct in the sense that that's the effect of the variable reassignment. Does that include the hook function? I think the board found under Ross that that's not directly called. Yes, your honor, that is the, I mean, that is the hook function and that's the whole issue in this case. The board's finding is that the strategy of variable reassignment results in what it characterized as an indirect call and that's because the original function's name is still in the is that Dr. Medvedevich testified that what's actually occurring as a result of the variable reassignment is a direct function call to the first function. But more importantly, we think that we should prevail in this appeal based upon the language of the construction itself. This was a case where the board was deciding two IPRs concurrently on the same day and in the 1979 IPR, its construction for a first function was a statement or instruction in the content, the execution of which causes the function to provide a service. That's construction one. The other construction that the board originally entered in this case, in the 151 IPR, is that a statement or instruction in a program requesting the services of a particular, i.e. first function. So the original construction that the board admitted was incorrect required calling a particular function. The board moved off of that language admitting that it was incorrect and erroneous to have two different constructions for the same term and two IPRs decided the same day and it moved to the construction in the 1979 case. The language of its construction in the 1979 case, and this is an appendix 3980, doesn't require calling a particular function. It doesn't say anything about which function is called other than that the execution must cause the function to provide a service. So literally under the language of the corrected construction, the disclosure of the prior art in Ross should satisfy that construction. Would you say that under the board's construction, the revised construction in the 151, that the concept of direct or indirect is irrelevant? Yes, your honor. Now the board misapplied its corrected construction. So we believe that in addition to the original error that was made, on re-hearing the board admitted that it had made an error but then it made the same mistake that the board made in the Owens-Corning versus Fassfeld case, where in Owens-Corning the board construed a term, and this was concerned roofing material, to not require coating in asphalt. But then when applying that term, required that the roofing materials either be coated in asphalt or eventually be coated in asphalt. And as a result of that erroneous construction, or misapplication of the construction, found that the prior art didn't satisfy the limitation. We believe that the corrected construction wasn't applied properly when it was reached. Now, why didn't the board reach secondary considerations on this issue? Your honor, because it found that Ross didn't satisfy this limitation. It never got to that issue. What do you say we should do if the court were to agree with your position on this call to a first function question that you've been arguing? In other words, you're saying that there was a, whether it's a misconstruction or misapplication of a correct construction, what would be, if the court would agree, what would be the result? Be a remand? I believe that a remand would be required in any event, because the board did not reach two issues that Fingen raised. One concerning whether it could show a conception date before Ross's... So you're not asking for a straight reversal on this issue? We did originally, but given identification of those issues, I think that a reversal would be warranted, but you wouldn't be able to enter a judgment, you'd remand. So we're asking for correction of the claim construction error, and then a remand for the board to identify. There's another issue in this case I'd like to draw the court's attention to. The board's finding of indirectness is based on Dr. Medvidovich's characterization of Ross. It's in Appendix 84 through 87. This is a case where Dr. Medvidovich simply labeled the software writing strategy of variable reassignment as an indirect function call. Dr. Medvidovich's opinion on that point isn't supported by any evidence. You'll find his opinion in his declaration in Appendix 6129 to 6130. The merely saying, as Ipsy dicks it, that variable reassignment causes a function call to be indirect isn't enough under this court's precedence for the board to find, as it did, that Ross's call is indirect. So not only from a claim construction standpoint do we have an error here, but on the merits. The board needs to do more than just point to an expert declaration that uses the word indirect to support a finding. You would say that's particularly so here because of the existence of the cross-examination, which seems to undermine that expert report assertion. Do I understand? I just want to make sure I understand correctly. Absolutely, Your Honor. If you may take just a moment to draw the court's attention to the gray brief at 16. We've summarized those three bits of testimony from Dr. Medvidovich and in our view they're consequential. What page are you on? Gray brief page 16. Dr. Medvidovich testified. You'll find starting about a quarter or a third of the way down and then two-thirds of the way down at the very bottom. Fourth line down, second paragraph. Active X object is now a reference in memory that's going to be pointing to something of type hooked active X object. Hooked active X object is the first or substitute function. Active X object was the second or original function. He then testified when you call active X object you would really be referencing the variable itself, which is assigned to hooked active X object. And finally, there's no indirectness. This is the very bottom of the page. When there's a reference to active X object, the actual object that's getting referenced is hooked active X object. So Dr. Medvidovich was quibbling with what he was characterizing with no supporting evidence that variable reassignment means it's an indirect function call. But there's no explanation in the record in appendix 61, 29, or 30 to back that. Simply a label. The board accepted that label and then found that Ross didn't satisfy the limitation. He was also asserting, if I remember correctly, that the hook script was actually referring to the original function. Do I have that correctly? And you think that this testimony from Mr. Medvidovich also contradicts that assertion? Yes, Your Honor. And again, this is all about the question of what the code writing strategy of variable reassignment means. I have nothing further. Unless the panel has any questions. May it please the Court. In the two IPRs that were instituted against the 154 patent, the board provided detailed factual findings of why the prior art did not invalidate the 154 patent. Counsel spent his entire time speaking about the 151 and the Ross, so I'll start there. Ross has a trick. The trick of the hook function is throughout the specification. Paragraph 10, 11, 12, 13. This is all on APX 4314. You call the original function. Then you do a trick. You do the variable reassignment. And you do the variable reassignment so that you can trigger the system. And the 154 patent recognizes that. How though does the patent claim require a safe system? Because, as the petitioner constantly points out, they equate in one embodiment, the first function is the substitute function and the second function is the original function. You don't call the original function unless you know it's safe. So that's why you put in the substitute function. Ross doesn't do that. If for some reason that variable reassignment gets overwritten, bypassed, you're gonna be hit with malicious code because the original function is going to execute. It's going to execute that code. The 154 in the example provided by the petitioner, they substitute that function. They don't allow that function to be called at all. And that makes it safer. Because if you execute a substitute function, there's no chance that you're going to execute the original function if it is determined to be malicious. So it's a safer system. Council argued that there's inconsistencies between the definitions and what's being called and what's not being called. The board found that there's calls to original functions, not hook functions. Dr. Medvedevic, on our red brief, page 40, we explain it in detail, says there's calls to original functions, not hook functions. Their expert said it. Dr. Rubin, he explicitly stated there is not a call, an explicit call, to a hook function. There are only calls to original functions in ROS. And then ROS couldn't be clear. ROS throughout the specification says that you call the original function. What about this language that says in Dr. Medvedevic's testimony, the cross object, you would really be referencing the variable itself, which is assigned to be hooked active X object. So then you are then calling, you know, I guess the implication is that it satisfies the claim language of calling the first function. Well, Your Honor, if you if you parse that and you look at it, if you look at it, he says that it's referencing. This is the variable reassignment. Dr. Medvedevic is always very clear, and so is ROS, that you call the original function. It never states in ROS that you call the hook function. And Dr. Medvedevic, in his testimony, never states that you call the hook function. Do I understand though correctly that when you reference the variable, what you're doing is causing the hook function to happen? You're triggering the hook function. But call is a noun, and that's the statement that's in the content. And the call is to an original function. There's no doubt about that. And so what you're saying is that if the call is to the original function, which then references the hook function, that doesn't satisfy call to the original function? Absolutely. It doesn't, absolutely, Your Honor, because it's not as safe. If you don't have, if you're still calling the original function and something happens to that variable reassignment, you're going to execute the malicious code. So your argument depends on the idea that referencing the variable could result in, if something goes wrong with that step, and then because it's in the malicious code, then the hook function would never actually occur? Absolutely, Your Honor. And that's why 1.5.4, I mean, again, using the examples by Petitioner, obviously, we're going to do here, they say that the first function is the substitute function, the second function is the original function. So using those examples, you have to put a substitute function in the code itself so that the substitute function is called, not the original function. And that makes it safer. That makes the system so that if you do have some type of malicious code or some malicious actor that's going to get in there and change it, that the function is never going to, there's never going to be a call to that function. Counsel talked about the difference in the claim constructions as well that the detailed analysis of the rehearing decision. And this is at APX 3980. And in that decision, the board explained that it actually used the construction of a statement or instruction and the content that causes the first function to provide a service, or causes the function to provide a service, in its analysis. It uses that analysis. And then it goes on to explain how it doesn't change their conclusions by modifying the construction. Because it doesn't eliminate the requirement, their construction does not eliminate the requirement that there is a call to a first function. And the Petitioner identified the first function as the hook function. And there's simply not a call to a hook function. It's not in the content. And that's what the board found and why the 154 patent is valid over Ross. Over other reasons, but that's what the board landed on. That's all they had to get to. If there's no questions on Ross, I can move on to Kazan, if that's helpful. Okay. So Kazan is the appeal for the Petitioner. Kazan is actually even less safe. Because not only do you call the function that could be malicious, you actually invoke it. Because the monitoring code is rewritten into the function itself. And in order for that function to execute, in order for that processing code to execute, you have to invoke the function itself. So Kazan is even more dangerous. Because if for some reason that processing code isn't triggered, now the malicious code has to execute. Because you've already executed that function. So Kazan is even more dangerous than Ross. And the 154 protects against that situation. Because it only allows the second function, which the Petitioner's identified as the original function, to be invoked if the security computer determines it's safe. Kazan executes that function no matter what. It has to invoke that function. Because that's how it does the processing step. That's how it processes and is supposed to provide some safety. If you never invoke the function, then there's never going to be any processing of any malicious code. And so it makes Kazan even less safe than the Ross reference. If you have any questions about Kazan, I'm happy to answer them. If not, I think we got it. All right. Thank you. Thank you. Thank you to my friend Mr. Hanna for reaching into the 1979 case so I can address it. Yes, you did. I appreciate that. You did address it. The issue here is a claimed construction issue. We argue that invoking a second function requires executing the function, not just calling it. Reversal would be appropriate if the court finds that the proper construction of invoke requires execution of the function, not the call. There's been confusion at the board level and also in the argument today about the difference between invoking a If the court agrees that the proper construction of invoke requires that the function executes, which would be consistent with the 151 IPR where the board treated invoke as meaning the effect of the call to the function being executed, then reversal would be required. It's worth noting that in oral argument, Mr. Hanna agreed with the board in response to questioning that invoking requires function execution. That's at appendix 3942, not just calling. We concede in this case that the Kazan reference always calls that function, but it does not invoke that second function. Now the fact that it's a function is always called would not be enough if the construction requires executing the actual operation of Kazan. At appendix 19, the board recounted the disclosure in Kazan that not even the first line of instructions in the the suspect or original function is executed. Not even the first line. The line is copied out and moved down and it's not executed until after security check. That's appendix 41. The board also found, and it's undisputed on appeal, that by intercepting the original function, the program does not execute the body of that original function, but instead executes another function altogether, the wrapper function. So the operation of Kazan is not in dispute here. There is a call, however there is no execution of the original function until after the safety check. Claim construction should resolve the case because if the court concludes that invoking a function requires executing the function as the board indicated in the 151 IPR, then reversal would be required because the board was focused only on whether the function is called. And in fact it was confused when appendix 51 noted that Kazan must call first the target function, finding that the act of calling the function met the invoking the function. We thank you very much. We thank counsel for the arguments.